UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORDALL NEAL #236735,

    Plaintiff,                                              Hon. Robert J. Jonker

v.                                                           Case No. 1:23-cv-895

KEITH PELKEY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on Defendant's Motion and Corrected Motion for Summary Judgment on the Basis of Exhaustion. (ECF Nos. 21 and 26.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **granted** and that Plaintiff's complaint be **dismissed**.

**I. Background**

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility, has sued Resident Unit Manager (RUM) Keith Pelkey, pursuant to 42 U.S.C. § 1983, based on events that occurred at the Oaks Correctional Facility (ECF) in early 2023. Following initial review of Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and 42 U.S.C. § 1997e(c), Plaintiff's remaining claim is his retaliation claim against RUM Pelkey.

Plaintiff alleges that after he transferred into ECF on January 5, 2023, he began asking RUM Pelkey for authorization to purchase a footlocker to hold his "excess legal property." (ECF No. 1 at PageID.7.) However, Pelkey declined, informing Plaintiff that his nearly four-year-old

1

determination of excess legal property did not entitle him to an excess legal property footlocker without following the steps necessary to determine whether Plaintiff currently possessed excess legal property. (*Id.*) Plaintiff disagreed with Pelkey and continued to push the issue. (*Id.* at PageID.8.) When Pelkey told Plaintiff to step away, Plaintiff threatened to file a grievance against Pelkey on the basis that his refusal to authorize a footlocker was "harassment." Pelky responded that he did not care about Plaintiff's threatened grievance because nothing would come of it and that Pelky would never authorize the purchase of an excess legal property footlocker due to Plaintiff's smart mouth. (*Id.*)

On January 27, 2023, Plaintiff spoke with Warden Burgess during "count" in front of Pelkey. Plaintiff described to the warden his contact with Pelkey regarding the footlocker. Burgess asked if Plaintiff had excess legal property, if Plaintiff was still fighting his case, and if Plaintiff had counsel. After Plaintiff responded "yes" to each question, Burgess photographed Plaintiff's ID card, told Plaintiff to fill out a disbursement order, and "assured Plaintiff all would be good." (*Id.*) Plaintiff subsequently sent Burgess a letter confirming these details, asking him to personally see to it that Plaintiff's disbursement request for a footlocker would "get processed," and requesting that he be loaned a container, a footlocker, or a "green state bag" to store his excess legal property pending the arrival of his legal footlocker. (ECF No. 1-5 at PageID.49.)

On February 6, 2023, RUM Pelkey told Plaintiff to pack up all of his property in a state green duffle bag and leave it in his cell so Pelkey could examine it. (ECF No. 1 at PageID.8–9.) A corrections officer gave Plaintiff a duffle bag for that purpose. Pelkey did not come to Plaintiff's cell that day. (*Id.* at PageID.8.) Plaintiff then wrote Pelkey a letter that evening. (ECF No. 1-6 at PageID.51.) In the letter, Plaintiff reported to Defendant Pelkey that Warden Burgess had instructed Plaintiff to order the footlocker. Moreover, because Plaintiff had asked Burgess for the

2

loan of a container, footlocker, or bag to store his excel legal property, Plaintiff interpreted the bag that he received as the response to that request. Plaintiff closed by asking whether the disbursement had been submitted and processed. (*Id.*)

Defendant Pelkey called Plaintiff to his office the next day and again asked Plaintiff to pack up all of his property in the state green duffle bag. (ECF No. 1 at PageID.9.) Plaintiff complied and alleges that after packing everything he had in one full duffle bag and one full "personal" footlocker, he still had excess legal property a foot high that covered over half his mattress. (*Id.*) Plaintiff then reported to Pelkey that he had packed his property as directed. Plaintiff alleges that Defendant Pelkey told him that he would examine Plaintiff's property when Plaintiff returned from lunch. Plaintiff alleges that when he returned from lunch, he stopped at Pelkey's office, but the door was shut. Plaintiff alleges that Pelkey then gazed at him "infuriatingly and spewed verbal insults at Plaintiff." Pelkey also said, "I will teach your ass what happens when you threaten me with writing a grievance on me[,] don't you see my door is shut." (*Id.* at PageID.9–10.) Plaintiff responded that he was not going to tolerate any more insults and harassment and that he intended to write a grievance against Pelkey. (*Id.* at PageID.10.)

Defendant Pelkey then accompanied Plaintiff to his cell and examined the property. Pelkey accused Plaintiff of playing games and told Plaintiff that he should not have gone over Pelkey's head by talking to the warden. Pelkey cautioned Plaintiff that going over his head would accomplish nothing because his superiors were of the same mind as Pelkey. Pelkey warned Plaintiff that if he kept "this up" he would end up in the hole. (*Id.*) That evening, Plaintiff received the disbursement through the mail. Pelkey had not authorized the disbursement because he determined that Plaintiff "did not have excess property . . . ." (*Id.* at PgeID.10–11.) Two days later,

3

on February 9, 2023, Plaintiff wrote a grievance against Pelkey. The next day, Plaintiff wrote another grievance against Pelkey. (*Id.* at PageID.11.)

At the end of February, Plaintiff spoke to the warden again. He complained about Pelkey's behavior. Warden Burgess informed Plaintiff that he was aware of "what's going on and that plaintiff would be good soon . . . ." (*Id.*) A few days later, Plaintiff was told to pack up all of his property for a transfer out. (*Id.*)

Plaintiff alleges that Pelkey's mistreatment before his grievances and his transfer were retaliatory. Defendant Pelkey contends that he is entitled to summary judgment because Plaintiff failed to exhaust his retaliation claim.

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the

4

burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

5

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of his motion, Pelkey submits a Step III Grievance Report showing the grievances that Plaintiff pursued through Step III of the MDOC's grievance process near the time the events at issue occurred. (ECF No. 22-3.) The report shows that Plaintiff pursued the following grievances through Step III: (1) ECF-23-03-0686-27b (0686 Grievance); (2) ECF-23-02-0299-07A (0299 Grievance); (3) ECF-23-03-0564-28C (0564 Grievance); and (4) ECF-23-02-0342-17G (0342 Grievance). (*Id.* at PageID.220.)

6

### A.     0686 Grievance

Plaintiff filed the 0686 Grievance following his transfer to Macomb Regional Facility. He complained that his typewriter had been damaged during transit because ECF staff failed to pack it with proper material to secure it. (*Id.* at PageID.223.) This grievance was denied at Steps I and II and rejected at Step III. (*Id.* at PageID.221–22.) Neither party asserts that this grievance exhausted any claim against Pelkey.

### B.     0299 Grievance

Plaintiff filed the 0299 Grievance on February 8, 2023, complaining that Defendant Pelkey: (1) refused to submit his disbursement to the business office so that he could purchase a legal property footlocker; and (2) conducted an excess legal property hearing. Plaintiff asserted that Defendant Pelkey was not authorized to conduct such a hearing. (*Id.* at PageID.227.) The 0299 Grievance was denied at Step I. (*Id.* at PageID.228.) The denial was upheld at Steps II and III. (*Id.* at PageID.224–26, 228.)

Pelkey contends that this grievance did not exhaust the retaliation claim because it forms at least some of the protected conduct underlying the retaliation claim. (ECF No. 27 at PageID.288.) Plaintiff does not contend that the 0299 Grievance exhausted his claim. (ECF No. 25 at PageID.249–50.)

### C.     0564 Grievance

Plaintiff filed the 0564 Grievance on March 8, 2023, following his transfer. In this grievance, Plaintiff complained that RUM Pelkey retaliated against him by initiating the transfer to Macom Regional Facility based on Plaintiff's exercise of his First Amendment rights. In addition, Plaintiff complained that, when he packed up, the officers at ECF failed to properly pack his typewriter in a box, resulting in damage to his typewriter during transit. He argued that these acts were "RETALIATION for submitting meritorious grievances against RUM Pelkey." (*Id.* at

7

PageID.234 (all caps in original).) This grievance was rejected at Step I because it contained multiple issues. (*Id.* at PageID.235.) The rejection was upheld at Steps II and III. (*Id.* at PageID.230–33.)

Defendant Pelkey contends that the 0564 Grievance could not have properly exhausted Plaintiff's retaliation claim because it was rejected at all three steps as containing multiple issues. *See* Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ J(1). Pelkey further contends that because Plaintiff did not allege that Pelkey was involved in any way with the damage to his typewriter, the rejection was proper because the grievance concerned both the retaliatory transfer and damage to the typewriter, which were unrelated. (ECF No. 27 at PageID.289.) Plaintiff responds that this grievance "[c]learly . . . informed prison officials that he had been retaliated against by Defendant Pelkey." (ECF No. 25 at PageID.249.) However, Plaintiff fails to respond to Pelkey's specific argument; that is, he does not dispute Pelkey's contention that the rejection was proper.

Under these circumstances, Plaintiff's failure to respond to Pelkey's argument is deemed a waiver of any argument he may have that the rejection was improper. *See AK v. Behavioral Health Sys., Inc.*, 382 F. Supp. 3d 772, 774 (M.D. Tenn. 2019) ("[W]hen a party fails to respond to an argument, that argument is generally deemed to be unopposed and the proposition conceded"); *Gomery v. Continental Cas. Co.*, No. 1:13-cv-947, 2014 WL 4209648, at *4 (W.D. Mich. Aug. 25, 2014) ("Plaintiffs' failure to respond to Defendant's business-enterprise-exclusion argument amounts to a waiver of their argument on the issue and a fatal omission in this case.") (citing, among others, *Notredan, L.L.C. v. Old Republic Exch. Facilitator Co.*, 531 F. App'x 567 (6th Cir. 2013) (recognizing that the plaintiff had waived claim by failing to respond to or refute arguments made by the defendants in the district court)); *Murray v. Geithner*, 763 F. Supp. 2d 860, 871-72 (E.D. Mich. 2011) ("When a party fails to respond to a motion or argument therein, the Sixth

8

Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived." (citing *Humphrey v. U.S. Atty. General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008))).

### D.    0342 Grievance

Plaintiff filed the 0342 Grievance on February 10, 2023, complaining about Defendant Pelkey's conduct following lunch on February 7, 2023. More specifically, Plaintiff noted that after lunch, Pelkey informed Plaintiff that he wanted to hold an excess legal property hearing, which Plaintiff alleged Pelkey was not entitled to do. Plaintiff recounted how Pelkey went to Plaintiff's cell and disturbed his sleeping cellmate. Plaintiff further alleged that RUM Pelkey was trying to provoke Plaintiff by going in his cell while Plaintiff and his cellmate were both there, and that his conduct violated the "Employee Handbook." (*Id.* at PageID.240.) This grievance was denied at Step I. (*Id.* at PageID.241.) The denial was upheld at Steps II and III. (*Id.* at PageID.236–39.)

Defendant Pelkey contends that this grievance did not exhaust Plaintiff's retaliation claim because it was protected conduct underlying the retaliation claim and did not allege that Pelkey's conduct was retaliation. (ECF No. 27 at PageID.288.) Plaintiff responds that this grievance served to exhaust his claim because "[c]learly the Plaintiff informed prison officials that he had been threatened by Defendant Pelkey," which occurred "after the Plaintiff told Pelkey that he was going to file a grievance against him." (ECF No. 25 at PageID.249.)

Contrary to Plaintiff's argument, his Step I grievance does not mention retaliation or any threat to file a grievance. While Plaintiff did state in his Step II appeal that Pelkey's "intentions were to threaten [Plaintiff] and to intimidate [him]" and that such conduct was "RETALIATORY conduct derived from me going over his head and speaking directly to Warden Burgess" (*Id.* at PageID.238 (all caps in original)), the Step II response was limited to the issue Plaintiff raised in his Step I grievance. (*Id.* at PageID.239.) In these circumstances, Plaintiff did not properly exhaust

9

his claim by raising a new issue at Step II, which the Step II respondent did not address. *See Mays v. Pynnonen*, No. 2:17-cv-167, 2021 WL 469041, at *7–8 (W.D. Mich. Jan. 5, 2021), *report and recommendation adopted*, 2021 WL 266620 (W.D. Mich. Jan. 27, 2021) (finding the plaintiff's retaliation claim unexhausted where the plaintiff first raised retaliation in his Step II appeal and the Step II and III responses addressed only the issues raised at Step I); *Dykes v. Fuller*, No. 18-11528, 2019 WL 4744433, at *5 (E.D. Mich. Sept. 30, 2019) ("The text of the Pay Grievance at Step I – set forth above – clearly demonstrates that Dykes did not indicate in any way that he was complaining about retaliation. Thus, the reference to retaliation at Step III did raise a new issue and was not sufficient to exhaust his administrative remedies."); *Newson v. Steele*, No. 09-10346, 2010 WL 3123295, at *5 (E.D. Mich. July 1, 2010), *report and recommendation adopted*, 2010 WL 3123288 (E.D. Mich. Aug. 9, 2010) ("Plaintiff cannot raise a new issue in a grievance appeal and have it be deemed exhausted, unless the MDOC proceeded to address that new claim on the merits." (citing *Cain-El v. Burt*, No. 02-73050, 2003 WL 21648721, at *7 (E.D. Mich. Mar. 31, 2003))). Therefore, this grievance did not exhaust Plaintiff's retaliation claim.

## IV. Conclusion

For the foregoing reasons, I recommend that the Court **grant** Defendant's motion and corrected motion (ECF Nos. 21 and 26), **dismiss** Plaintiff's remaining retaliation claim **without prejudice**, and close the case.

Dated: March 18, 2024                                          /s/ Sally J. Berens
                                                                         SALLY J. BERENS
                                                                         U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).